**Eduardo VON PERVIEUX and Guistina Boschetti de Von Pervieux, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 77–1604.

United States Court of Appeals,
Third Circuit.

Argued Jan. 9, 1978.

Decided Feb. 23, 1978.

Filindo B. Masino, Berk, Masino, Moonblatt & McDougall, Philadelphia, Pa., for petitioners.

Philip Wilens, Chief, Government Regulations and Labor Section, Crim. Div., James P. Morris, Chester J. Halicki, Dept. of Justice, Washington, D.C., for respondent.

Before ADAMS, BIGGS and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case presents a challenge to an order of the Board of Immigration Appeals denying a petition by Eduardo and Giustina Von Pervieux for adjustment of status, a remedy which allows aliens who are eligible for immigrant visas to obtain the status of permanent residents in this country. *See* 8 U.S.C. § 1255. Since we have concluded that the Immigration and Naturalization Service (hereinafter INS) did not abuse its discretion in rejecting the petitioners' request, we affirm the order of the Board.

### A.

Mr. and Ms. Von Pervieux, accompanied by their children, entered this country from Argentina on April 1, 1970, as non-immigrant visitors for pleasure. They did not depart within the required time period for such visitors, but instead they remained and each secured employment here. As a result of an INS inspection held late in 1971 at the factory where Mr. Von Pervieux was employed, the violation of the time provision by the Von Pervieux's, as well as their transgression of the rule that visitors may not obtain employment without permission, came to the attention of the immigration officials. Deportation proceedings against them were then instituted.

On December 22, 1971, while the deportation proceedings were pending, Mr. Von Pervieux wrote a letter to then-President Nixon to explain his family's plight. He mentioned that he and his wife had sold their home and belongings when they left Argentina, and asked the President to assist them in remaining in the United States. That letter became part of the administrative record in the case.

At the deportation hearing held on January 5, 1972, Mr. and Ms. Von Pervieux admitted that they were deportable, for they had violated the terms of their visas by overstaying the stipulated time limit as well as by becoming employed in the United States without permission. They were granted the right to depart voluntarily no later than March 5, 1972.

The Von Pervieux's did not leave the country by March 5, 1972, and on November 2, 1972, they filed a motion to reopen their case. At a hearing on January 5, 1973, they submitted an application for adjustment of status, and the hearing was continued pending investigation of their application.

Under the statute in effect at the time that the Von Pervieux's applied for adjustment of status, citizens of countries located in the Western Hemisphere were not eligible for such relief. Thus, a threshold issue at the hearing on the Von Pervieux's request was whether they had been born in the Western Hemisphere. There apparently is no doubt that Ms. Von Pervieux was born in Italy. Mr. Von Pervieux claimed to have been born in Berlin and presented an affidavit sworn to by his mother to that effect. However, it appears that there exists a birth certificate in his name from Argentina, and that there is no such certificate from Germany.[1]

Based on the answer to a question regarding Mr. Von Pervieux's place of birth, the INS sought a third deportation hearing, which was conducted on July 24, 1974. The immigration judge found that Mr. Von Pervieux in fact had been born in Argentina, and that it

strains all credibility to believe that when he went to school, went into military service, secured an Argentinian passport, applied for a non-immigrant visa to enter the United States, he stated Argentina as his place of birth *if* all his life he believed he had been born in Germany. We simply do not believe this. [Certified Record p. 149]

On January 24, 1975, the immigration judge entered an order denying the Von Pervieux's application for adjustment of status, and granted voluntary departure with an alternative deportation order. An appeal taken from that order was dismissed by the Board of Immigration Appeals on July 24, 1975.

Petitioners again filed a motion to reopen. They argued, for the first time, that they should be granted adjustment of status because Ms. Von Pervieux qualified as an "investor" under the immigration statute. As such, she claimed, she was not required to obtain a labor certification and therefore was eligible for adjustment of status.[2] A fourth hearing was held on December 3, 1975, primarily to determine whether Ms. Von Pervieux was an "investor."

The immigration judge, on May 19, 1976, rejected Ms. Von Pervieux's claim that she was entitled to adjustment of status on the ground that she was an "investor". The immigration judge indicated that he was not convinced, by the evidence adduced at the hearing, that Ms. Von Pervieux had met the requirements for being an "investor" established by the regulations, namely, those of having invested a sufficient sum of money in a business and of having had the requisite year of business experience.[3]

---

1. The Argentinian birth certificate, which purports to record a birth in 1940, was dated 1941.

2. 8 C.F.R. 212.8(b) provides:
   The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require a labor certification: . . . .
   (4) An alien who establishes on Form I-526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of in-

vesting, capital totalling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

3. The Von Pervieux's insisted that they had managed a restaurant in Argentina for two years, and that Ms. Von Pervieux invested the requisite sum of money in a similar restaurant in this country. However, the immigration judge was not persuaded that enough of the money could be attributed to Ms. Von Pervieux herself in order to qualify her as an "investor." Also, he was not convinced by the documenta-

Also, the immigration judge reaffirmed the prior finding that Mr. Von Pervieux had been born in the Western Hemisphere and was ineligible for adjustment of status.[4]

Further, the immigration judge ruled that, even if Ms. Von Pervieux were eligible for designation as an "investor," in the exercise of his discretion he nonetheless would deny the request for adjustment of status, which if granted would have entitled her and her family to remain in the country. That decision was based on evidence that the Von Pervieux's apparently misrepresented their intention to the immigration authorities at the time they entered this country, for they seemingly had an intent at that moment to remain permanently—as indicated, for example, by the statement that they had sold their home in Argentina.

On appeal, the Board affirmed the immigration judge's decision. It reviewed in considerable detail the evidence bearing on the question of Ms. Von Pervieux's status as an "investor," and concluded that she had not proven that she qualified for such recognition. The Board also stated that, as a discretionary matter, relief should be denied, for "(i)t is clear that there is strong evidence in the record that both respondents entered the United States with a preconceived intent to remain permanently." However, for "humanitarian and family" reasons, the Board reversed the portion of the immigration judge's order that did not grant voluntary departure. The final directive provided for voluntary departure with an alternative order of deportation to Argentina or Italy. Petitioners have taken an appeal from that order.

## B.

The Von Pervieux's appeal raises two principal questions. First, was it error to find that Ms. Von Pervieux was not qualified for "investor" status under the Board's regulations, and thus that she was not statutorily eligible for adjustment of status? Second, by denying the Von Pervieux's petition for adjustment of status, did the Board abuse its discretion?

██ We do not deal with the first issue, for as we shall see it is not crucial to the resolution of the present appeal. The Supreme Court indicated in *INS v. Bagamasbad*, 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976), that the question of statutory eligibility for adjustment of status is not dispositive of an appeal by a petitioner seeking such adjustment. Even if a petitioner is statutorily eligible, the Supreme Court suggested, the Board is charged with deciding whether, in the exercise of its discretion, it is appropriate to adjust the status of such a petitioner.

In *Bagamasbad*, an alien who had overstayed her tourist visa for four years sought to have her status adjusted to that of a permanent resident alien. The district director of the INS and the immigration judge presiding at the deportation hearing declined to rule in her favor. "Neither the District Director nor the immigration judge addressed himself to whether respondent satisfied the specific statutory requirements for permanent residence." 429 U.S. at 25, 97 S.Ct. at 201. The Supreme Court, after referring to the "general rule" that "courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach," *id*, held that there was no need for the immigration judge "to arrive at purely advisory findings and conclusions as to statutory eligibility." 429 U.S. at 26, 97 S.Ct. at 201.

The immigration judge and the Board of Immigration Appeals did make specific findings and conclusions in the present case. The petitioners' argument here, therefore, is not as strong as the one advanced on behalf of the alien in *Bagamasbad*. Thus,

---

ry evidence that she possessed the needed business experience, or that her role in either the Argentina restaurant or the one in the United States was of a sufficiently managerial nature to qualify her as an "investor" under the regulations.

4. At oral argument, the government noted that the "Western hemisphere exclusion" is no longer relevant, and thus that Mr. Von Pervieux now would be statutorily eligible for adjustment of status even though he was apparently born in Argentina.

under *Bagamasbad*, the discussion of the first issue—whether it was error to find that Ms. Von Pervieux was not qualified for "investor" status—is unnecessary.

Petitioners' second argument—that the Board abused its discretion in declining to grant the discretionary relief of adjustment of status [5]—must be evaluated in terms of the precepts announced by this Court, sitting en banc, in *Ameeriar v. INS*, 438 F.2d 1028, 1029 (1971). There the standard for the proper exercise of discretion with respect to a petition for adjustment of status was said to be the one expressed in *Santos v. INS*, 375 F.2d 262, 264 (9th Cir. 1967):

> An 'evaluation of all the facts' requires due consideration to be given to the presence or absence of special equities. . . . Indeed, such a requirement is implicit in the high burden of proof placed on the applicant by the Board. 'The extraordinary discretionary relief provided in Section 245 of the [Immigration and Nationality] Act can only be granted in *meritorious* cases; the *burden* is always upon the alien to establish that his application for such relief *merits favorable consideration*.' (emphasis in original)

As the Court in *Ameeriar* stated, "Adjustment of status is therefore a matter of administrative grace, not mere statutory eligibility." 438 F.2d at 1030.

Although, of course, in exercising its discretion the Board is not beyond the pale of judicial review, *Ameeriar* suggests that, so long as there is factual support in the record for the Board's decision that adjustment of status is not appropriate, and so long as no other problem has arisen, there is no basis for an appellate tribunal to reverse the Board's discretionary determination. In *Ameeriar*, there were findings that the

petitioners in that case had entered the United States with the intention immediately to seek employment and adjustment of status. The special inquiry officer said that he could not grant adjustment of status because ". . . the adjustment of status provided for in that section of (the immigration) law is an extraordinary means of giving persons lawful permanent residence status where their cases have great merit." 438 F.2d at 1030. After reviewing all of the facts, we concluded in *Ameeriar* that it would be inappropriate to grant the aliens' petition, for such a result "would work an attrition and indeed a rapid erosion of the authority invested in the Attorney General by Section 245 to exercise his discretion in the granting or denying of petitioners' adjustment of status." 438 F.2d at 1033.

We are constrained to adhere to the guiding norm elaborated in *Ameeriar*, which is one of deference to the determination by the administrative authorities in the area of the adjustment of an alien's status. Thus, absent sufficient reason to act otherwise, we must respect the finding by the Board that there was "strong evidence" in the record to indicate that the petitioners entered the United States with a "preconceived" intent to remain permanently. As the Board made clear, such a "preconceived" intention frequently has been deemed a critical factor in determining whether to grant adjustment of status. *See Ameeriar v. INS*, 438 F.2d 1028, 1033 n.6 (3d Cir. 1971); *Chen v. Foley*, 385 F.2d 929, 935–936 (6th Cir. 1967); *Santos v. INS*, 375 F.2d 262, 264 (9th Cir. 1967).[6]

It cannot be said that the finding by the Board is without substantial support in the

---

5. The guiding statutory provision, 8 U.S.C. § 1255(a), states:

> The status of an alien . . . who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissi-

ble to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved.

6. *See also Tuan v. INS*, 531 F.2d 1337, 1338 (5th Cir. 1976); *Soo Yuen v. INS*, 456 F.2d 1107, 1108 (9th Cir. 1971); *Lee v. INS*, 446 F.2d 881 (9th Cir. 1971); *Cubillos-Gonzalez v. INS*, 352 F.2d 782, 783 (9th Cir. 1965); *Castillo v. INS*, 350 F.2d 1, 4 (9th Cir. 1965).

record or that it is so clearly unreasonable as to constitute an abuse of discretion. For in this case, there are a number of factors which, taken together, indicate that the Von Pervieux's had an intention, at the time that they came into the United States, of remaining indefinitely. For example, they had sold their home in Argentina before entering the United States. They also overstayed their visitor's visas without any explanation, and presumably would not have disclosed their situation to the proper authorities had the INS not discovered their condition as the result of an inspection of the plant where Mr. Von Pervieux was employed. Further, the fact that the Von Pervieux's secured employment in this country, and acquired household goods here through the use of credit, constitutes evidence in support of the Board's finding that they had an intention to remain permanently when they entered the United States. There is, consequently, a sufficient basis for concluding, as the Board did, that the Von Pervieux's did have an intention of living permanently in this country at the time that they procured their visitor's visas.

Inasmuch as there is a reasonable predicate in the record for the Board's determination, and since no special circumstances have been brought to our attention which

render inequitable the result in the present case, we are unable to conclude that there was an abuse of discretion on the part of the Board.[7] Therefore, its order will be affirmed.

---

7. Although we find no abuse of discretion by the Board, we are troubled by the treatment in this case of a few items of evidence.

The question of Mr. Von Pervieux' place of birth was important in establishing his statutory eligibility for adjustment of status. The immigration judge found that there was no doubt that he was born in Argentina, and that it "strains all credibility" to believe that he thought that he had been born in Germany. Given the historical fact that many people left Germany in the early 1940's, and given the wartime damage to the City of Berlin sufficient to account for the destruction of many public records, we would hesitate to say that Mr. Von Pervieux's contention about his birthplace is so improbable as to "strain all credibility."

Similarly, the immigration judge found that Ms. Von Pervieux's claim that she would work ninety hours a week at the restaurant was entitled "to be given little or no credence." There is no evidence in the record to support the statement, and it is common knowledge that there are many instances of proprietors of small family restaurants who work such hours.

Finally, a letter, written in Spanish by Mr. Von Pervieux, was a key piece of evidence in the administrative decision. However, the INS used a purported translation that was half the length of the letter, and was written in the third person. The translator tendered it as a "true and faithful translation," and the immigration judge and the Board accepted and relied on it, even when the petitioner disputed its accuracy. The translation was apparently correct on the decisive point—petitioners' sale of their home before leaving Argentina—and an accurate translation of the rest of the letter would scarcely have changed the outcome of the case. Nevertheless, we are concerned about the apparent willingness of the INS, which must often work with translated documents, to accept one that cannot possibly be a literal translation. There may be cases where such a purported translation is so inaccurate or misleading that its use would violate substantial rights of the individuals involved.