Paul Ching-Szu CHEN, Petitioner-Appellant,

v.

R. William FOLEY, District Director of Immigration and Naturalization Service of United States Department of Justice, et al., Respondents-Appellees.

No. 16988.

United States Court of Appeals Sixth Circuit.

Dec. 8, 1967.

---

Rives A. Manker, Memphis, Tenn., for appellant.

George W. Masterton, Jr., Dept. of Justice, Washington, D. C., (Thomas L. Robinson, U. S. Atty., Odell Horton, Jr., Asst. U. S. Atty., Memphis, Tenn., Maurice A. Roberts, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellees.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

As now constituted, this is a proceeding to review an adverse decision of the Board of Immigration Appeals, denying on discretionary grounds the petition of Paul Ching-Szu Chen, an alien, under Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 (Supp. 1966)[1], and directing his deportation. Because the issues are now entirely different than those originally presented in

1. Section 1255 provides in part, "(a) The status of an alien, * * * who was * * * admitted * * * into the United States may be adjusted by the Attorney General, in his discretion * * * to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

the appeal, the history of this case will be reviewed in detail.[2]

Petitioner is a native and citizen of China. He was born on June 23, 1907. He is married to Go Po Guioc and is the father of eight children, ranging in age from thirteen to twenty-five years, but he has been living apart from his family continuously since 1961. He is a person of considerable formal education, a portion of which was obtained in this country prior to the occurrences hereinafter related.[3]

Under date of December 10, 1960, E. Clayton Calhoun, President of Paine College, Augusta, Georgia, requested the Immigration and Naturalization Service to grant petitioner an immigrant visa under the provisions of Section 203(a) (1) (A) of the Act, 8 U.S.C. § 1153(a) (1) (A).[4] On January 27, 1961, the Service notified Mr. Calhoun that the petition had been approved and was being forwarded to the American Consulate in Manila, Philippines, where petitioner could make application for the visa. However, petitioner never applied for this visa but instead, on May 4, 1961, he applied for and received a nonimmigrant B-2 visa in Tokyo, Japan. The visa was issued allegedly so that petitioner could "sight-see in Honolulu, Hawaii, for three weeks."

Petitioner actually entered the United States on May 24, 1961, at Seattle, Washington, as a nonimmigrant and eligible to stay only until November 23, 1961, but he has remained here ever since. Soon after his entry petitioner was employed by Paine College. Shortly before the expiration date of his authorized stay, he was notified by the Service that his employment would prohibit them from extending his stay as a nonimmigrant, but that Paine College, if they wished to do so, could file another first preference petition pursuant to Section 203(a) (1) (A). The letter also informed Chen that his authorized stay would be extended until January 26, 1962, the expiration date of the original petition filed on his behalf by Paine College.

On November 10, 1962, Paine requested revalidation of petitioner's visa petition. Prior to this date but subsequent to his arrival in this country, petitioner had been advised by letters from friends and relatives abroad that his wife, while on a trip to visit her sick mother in China, had died of a heart attack.

2. The appeal orginally was from an order of the District Court entered in a habeas corpus proceeding upholding the Board's order denying Chen's application for adjustment of his status to that of a permanent resident on the ground that he failed to meet the statutory requirements to entitle him to that relief and ordering his deportation. During the pendency of the appeal, additional administrative proceedings intervened, which resulted in a second deportation order based on the same grounds as the first one, and a second administrative decision denying Chen's application for adjustment of his status to that of a permanent resident, which denial was based on discretionary grounds rather than failure to meet statutory requirements. Supplemental records of the new administrative proceeding have been filed in this Court. We will therefore treat the papers as a petition to review a final order of deportation under Section 106 (a) of the Act. 8 U.S.C. § 1105a(a).

3. Petitioner holds the following degrees: B.A. and M.A. degrees from the National University of Amoy; M.D. degree from the Peking Union Medical College; M.A. degree from Northwestern University; and Ph.D. degree from State University of Iowa.

4. As it then read, the section provided:
"(a) Immigrant visas to quota immigrants shall be allotted in each fiscal year as follows:
(1) The first 50 per centum of the quota of each quota area for such year, plus any portion of such quota not required for the issuance of immigrant visas to the classes specified in paragraphs (2) and (3) of this subsection, shall be made available for the issuance of immigrant visas (A) to qualified quota immigrants whose services are determined by the Attorney General to be needed urgently in the United States because of the high education, technical training, specialized experience, or exceptional ability of such immigrants and to be substantially beneficial prospectively to the national economy, cultural interests, or welfare of the United States * * *."

On January 1, 1962, petitioner married Ella Lucille Self, a thirty-year old native born United States citizen, who had been previously married and divorced. He immediately filed a petition for adjustment of status to permanent resident alien, using as grounds therefor his marriage and the subsequent visa petition filed on his behalf by Ella Lucille Self Chen. Paine College's revalidation request was never acted upon, and although the record is not entirely clear, the reason seems to have been that in view of petitioner's apparent qualification for nonquota status, the revalidation of a first preference petition was no longer necessary.

Ella Lucille Self Chen at some undisclosed later date withdrew her petition, but reinstated it by means of a letter to the Service under date of January 23, 1963. On November 22, 1963, her petition was denied on the ground that she had failed to provide adequate proof of the termination of Chen's prior marriage.[5] No appeal was taken from the denial of this petition.

On November 23, 1962, Paine College notified the Service that petitioner was no longer employed by it and that the College did not wish to sponsor him further in any action before the Service. Accordingly, on February 15, 1963, petitioner was notified in writing that he would be required to depart from the United States within one month. When he failed to leave the country on March 20, 1963, an order was issued requiring him to show cause why he should not be deported. 8 U.S.C. § 1251(a) (2).[6]

Hearings were commenced on April 1, 1963, and concluded one year later. During the early stages of the hearing petitioner was allowed to file another application for adjustment, based upon a 1962 amendment of the Act.[7] By the provisions of this amendment, certain aliens were accorded nonquota status if among other things they were on April 1, 1962, the beneficiary of an approved visa petition and if they were at the time of application for adjustment of status found to have retained their status as established in the approved petition. The Special Examiner found that the petitioner had not actively engaged in teaching at Paine College since June, 1962. That fact coupled with the information that the College neither considered petitioner to be employed by them nor did they have any interest in representing him before the Service, led the Examiner to conclude that petitioner had not at the time of his application for adjustment maintained first preference status. Therefore the Examiner held:

" * * * he [petitioner] is not entitled to the benefits of Section 2 of Public Law 87–885. He has not established that an immigrant visa is immediately available to him since he is chargeable to an oversubscribed quota. Accordingly, his application for adjustment of status under Section 245 will be denied."

The Examiner found petitioner to be in this country unlawfully but granted voluntary departure. On appeal the Board affirmed, except it ordered deportation.

Almost contemporaneously with the Board's decree, Chen entered into a contract with Rust College, Holly Springs, Mississippi, by the terms of which he

---

5. Chen's first wife, Go Po Guioc, upon investigation by the Service, was found to be very much alive, living in the Philippines where he left her and their children in 1961. When Chen's American wife learned of this fact, she obtained an annulment of their marriage in Mississippi. They had never lived together as husband and wife.

6. Sec. 1251(a) (2) provides:
   "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who * * * (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States * * *."

7. Public Law 87–885, section 2, 76 Stat. 1247.

agreed to teach at that institution through June 1, 1965. On September 12, 1964, Dr. Earnest A. Smith, President of Rust College, filed with the Service a first preference petition on behalf of Chen. No action was taken on this petition, and on June 8, 1965, Chen was served with notice to surrender himself at Memphis, Tennessee, within three days, for deportation to Formosa.

On June 10, 1965, Chen filed a habeas corpus action in the United States District Court for the Western District of Tennessee. A stay of deportation was granted pending a hearing on the merits. On August 13, 1965, the District Court rendered its decision affirming the Board's denial of adjustment of status but reinstating the Examiner's allowance of voluntary departure. Approximately two weeks later petitioner was notified by the Service that he had until September 26, 1965, to depart voluntarily, but upon failure to do so he would be subject to deportation. On September 30, 1965, the first preference petition filed by Rust College was denied. An appeal to this Court followed.

But that is not the present posture of the case. While the appeal was pending the statutory provisions controlling the instant case were substantially amended by Congress.[8] The amendment to Section 203 significantly rearranged the preferences and also altered the prerequisites of some of the old classifications.[9] The change which was crucial to the instant case was that "professionals"[10] automatically qualified for immigrant visas to the extent of their availability within the third preference group.

It appeared therefore that under the new law an immigrant visa might be more readily available to Chen, thereby removing the basis for the Board's denial of his most recent application for adjustment of status.

While this appeal was pending, Rust College, seeking to take advantage of the changes made by the amendment, initiated a third preference petition on behalf of Chen. The petition was granted and Chen was advised that he could now move for the reopening of his case and again file for adjustment of status, to be considered in the light of the recent amendment. Motion to reopen was made and granted, subject to the approval of this Court.

On the representation of the parties that further administrative proceedings might render the questions in the pending appeal moot, the Court entered orders on April 1 and June 27, 1966, allowing the appeal to be held in abeyance until completion of the planned administrative hearings.

The special inquiry officer's decision, following the reopened hearing, denied adjustment as a matter of discretion and ordered Chen deported. The decision was based on two grounds, only the second of which need be considered here inasmuch as the first was not adopted by the Board. The second ground was that it is the function of the immigration laws to keep the family unit together, and inasmuch as Chen's immediate family was and had been living in the Philippine Islands, it had not been demonstrated that allowance of adjustment of his status would accomplish this purpose. The

8. Public Law 89-236, section 3, 79 Stat. 912.

9. The amended section 203 provided in pertinent part:
   "(a) Aliens who are subject to the numerical limitations specified in section 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows: * * * (3) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a) (ii) of this title, to quali-

fied immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States. * * *"

10. 8 U.S.C. § 1101(a) (32) (Supp.1966) provides:
   "The term 'profession' shall include but not be limited to * * * teachers in the elementary or secondary schools, colleges, academies, or seminaries."

Board, in affirming, adopted the reasoning of the Examiner and adopted additional grounds for denying discretionary relief. Voluntary departure was allowed.

Although it has been necessary to recite a large number of facts and issues in order to place the case in its proper prospective, the issue for consideration by the Court at this time is in fact a very narrow one. The only question before this Court is whether the Board in its decision of February 24, 1967, denying Chen adjustment of status under Section 245 of the Act, abused its discretion. The questions presented by the initial appeal have become moot.

Section 245 of the Act is composed of two phases, the first of which enumerates certain objective requirements which an alien must meet in order to qualify for adjustment of status, and the second of which calls for the exercise of discretion by the Attorney General. In all of the proceedings involved in the original appeal, Chen was adjudged to have failed to satisfy one of the requirements of part one of Section 245. No discretion had been involved.

During the reopened proceeding Chen was the beneficiary of an approved third preference visa, and as such he thereby satisfied the objective requirements of the amended section. Relief was denied as a matter of discretion. The only relief which this Court could have awarded in the first appeal would have been to require the Board to exercise the discretion that it exercised in its latest decision.

The relief sought by Chen is by the very terms of the statute committed to the discretion of the Attorney General. In an appeal of this type the reviewing court is limited to an examination of the record to ascertain if that discretion has been abused. The Court may not substitute its judgment for that of the administrative agency. Foti v. Immigration & Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); Kassab v. Immigration & Naturalization Service, 364 F.2d 806 (6th Cir. 1966); Cubillos-Gonzalez v. Immigration & Nat-

uralization Service, Los Angeles, Cal., 352 F.2d 782 (9th Cir. 1965).

As pointed out earlier, Section 245 contains certain objective prerequisites which must be met before the relief afforded by that section is available. Once these conditions are satisfied, then the alien has the burden of persuading the Attorney General to exercise his discretion favorably. Tibke v. Immigration & Naturalization Service, 335 F.2d 42 (2nd Cir. 1964).

Simply because an alien fulfills the preliminary requirements, does not mean that he will automatically be accorded adjustment of status. Because this form of relief circumvents ordinary immigration procedures, it is extraordinary and will be granted only in meritorious cases, and the burden is on the immigrant to prove that his case is meritorious. Santos v. Immigration & Naturalization Service, 375 F.2d 262 (9th Cir. 1967). In United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), a case involving a petition for suspension of deportation based on hardship to a citizen, the Court said:

" * * * [T]he statute does not contemplate that all aliens who meet the minimum legal standards will be granted suspension. Suspension of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites have been met."

Just as the Attorney General must exercise discretion in the suspension of deportation, so must he exercise his discretion in adjustment of status proceedings, and it is only in case of abuse that his decision will be overturned.

As a discussion of the administrative proceedings is undertaken, it will be observed that in addition to one of the grounds advanced by the Special Inquiry Officer, the Board based its decision on another ground. This is in conformity with the settled practice that the Board is not bound by the decision of the exam-

iner and may determine the case de novo. Woodby v. Immigration & Naturalization Service, 385 U.S. 276, 278, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) footnote 2; De Lucia v. Immigration & Naturalization Service, 370 F.2d 305, 308 (7th Cir. 1966), cert. denied 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967).

The special inquiry officer, in denying relief, said:

"The * * * reason why this application will be denied is the fact that the respondent's wife and seven of their children, five of whom are minors, presently reside in the Philippine Islands, and the function of the immigration laws is to keep the family unit together."

Petitioner insists that it was error for the Examiner to rely upon the purpose of the law "to keep the family unit together" as justification for denying relief, since petitioner argues there is nothing in the immigration laws that would preclude him from petitioning for immigration visas for his entire family once his status was adjusted to that of permanent resident alien. The Board said:

" * * * [T]he respondent has shown little concern for his family in the Philippine Islands since his arrival in 1961. We find no evidence that he has supported his family during his residence in the United States. It is alleged that he earns a modest salary. According to the respondent's Federal income tax return for 1963 he earned a total of $2,300. There is no evidence before us that the respondent is in a position to finance the immediate passage of a family of eight from the Philippines to the United States."

Petitioner takes the position that the Court should take judicial notice that college professors now command substantial salaries. He asserts that one of the alleged errors committed by the Special Inquiry Officer, and urged before the Board, was that the officer had failed to consider the substantial contribution that the petitioner was making to the welfare of this country by rendering his services

to a small church related Negro school for a *modest* salary, when he could have been engaged by a larger school at a far more lucrative income.

But this was not his only employment in this country. He accepted employment elsewhere and was not frank in disclosing all of his places where he did work.

Petitioner's past performance with respect to his family did not convince the Board that he would do any better in the future. When petitioner's wife was interviewed by the Service in the Philippines in 1963, she stated that he had not written to her since he had departed for the United States, a period of more than two and one-half years. Nor does the record show much concern on his part for the welfare of his minor children when he learned of the alleged death of his wife.

In further explanation of its denial of relief, the Board pointed out that there was doubt as to whether petitioner entered the country as a bona fide nonimmigrant. The Board said:

"Furthermore, the record of the respondent's employment and his persistent efforts to adjust his immigration status raises a doubt as to the bona fides of respondent's entry as a nonimmigrant visitor for pleasure. We have consistently held that a preconceived intent to establish permanent residence via the nonimmigrant route [footnote omitted] is a factor to be considered in denying relief under Section 245 of the Immigration and Naturalization Act."

In this connection see Castillo v. Immigration & Naturalization Service, 350 F.2d 1 (9th Cir. 1965).

In our opinion there is substantial evidence in the record to support the Board's conclusion. Prior to the time that the petitioner entered the country, ostensibly as a nonimmigrant, a prospective employer had applied on his behalf for an immigrant visa. Ordinarily a nonimmigrant must obtain the permission of the Service before he may accept employment, and yet shortly after petitioner entered the

country he began teaching, without the necessary consent. The record shows that within approximately seven months after entry, Chen married a citizen, with whom he never cohabited, and without making much of an investigation to determine whether his first wife was really dead. Five days after his record marriage, he applied for permanent residence based upon the union.

██ The record further reveals that on May 10, 1962 and on April 8, 1963, private bills were introduced in Congress to accord petitioner permanent residence, and that petitioner actively pursued the passage of these bills. The bills failed to pass. With this information before it, the Board was certainly warranted in inferring that Chen had entered the country with intent to stay permanently. We are unable to find that the Board abused its discretion.

The decision of the Board denying discretionary relief under Section 245 is therefore affirmed.