MATTER OF TANAHAN

In Section 245 Proceedings

A-23273236

*Decided by Regional Commissioner November 13, 1981*

(1) Adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255, was not designed to supersede the regular consular visa-issuing processes or to be granted in nonmeritorious cases. *Chen* v. *Foley*, 385 F.2d 929 (6 Cir. 1967), *cert. denied*, 393 U.S. 838 (1968).

(2) The determination to grant permanent residence status under section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255, lies entirely within the discretion of the Attorney General. An applicant who meets the objective prerequisites for adjustment of status is in no way entitled to that relief. *Jarecha* v. *INS*, 417 F.2d 220 (5 Cir. 1969).

ON BEHALF OF APPLICANT: Walter G. Vartanian, Esquire
79 Milk Street
Boston, Massachusetts 02109

This matter is before the Regional Commissioner on certification from the Acting District Director in Boston, Massachusetts. The Acting District Director denied the instant application as a matter of discretion upon determining that the applicant failed to meet the "inspected and admitted or paroled" provision of section 245(a) of the Immigration and Nationality Act, 8 U.S.C. 1255(a).

Section 245(a) of the Immigration and Nationality Act provides in part that:

The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by *the Attorney General, in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . (Emphasis supplied).

The record relates to a 40-year-old married male alien, a native and citizen of Iran, who last arrived in the United States on June 5, 1979, by way of TWA flight number 753 from London, England. During the inspection process the applicant was referred by the primary immigration inspector at the port of entry to the secondary inspection area because the applicant was suspected of being an intending immigrant not in possession of a valid unexpired immigrant visa pursuant to section 212(a)(20) of the Act.

During the secondary inspection, it was ascertained that the applicant had been residing in England with his family and had resigned from the Oil Service Company of Iran of 1976. In addition, correspondence was discovered that indicated the applicant was actively seeking employment in the United States and had begun negotiations with an Atlanta employment agency. A letter was also found from the British Immigration office indicating that the applicant's request for the return of his passport had the effect of "cancelling the previous application for leave to remain" in the United Kingdom.

Given these facts the immigration inspector refused to admit the applicant to the United States and the applicant chose to execute a formal withdrawal of his application for admission instead of being detained for further inquiry by an immigration judge pursuant to section 235(b) of the Act.

Service Operations Instructions 235.1(o) sets forth the procedures to be followed in cases where an application for admission has been withdrawn and reads in part as follows:

> . . . In any case of an alien whose application for admission has been withdrawn or who has been ordered excluded and deported by a special inquiry officer and who is being turned over to the carrier which brought him to the United States for removal to the country from whence he came, the Form I-94 which that alien presented at the time of his application for admission shall be endorsed with the parole stamp and with the . following notation thereon: (Show date to which paroled) To the (show name of carrier) for the purpose of removing (show name of alien) from the United States.

> The original of this form shall be given to the alien for presentation to the carrier for endorsement of departure data and return to the Service. At the same time, Form I-259 shall be appropriately endorsed and served on the carrier. The port of entry will retain the duplicate copy of Form I-94 only until the original with departure data is received and forwarded to the Central Office . . .

The record contains a copy of Form I-275 (Notice of Withdrawal of Application For Admission to the United States) which states in part:

> . . . I understand that my admissibility is questioned for the above reasons, which I have read or which have been read to me in the English language. Although I understand I may choose to appear before an immigration judge for a hearing in exclusion proceedings, I request that I be permitted to withdraw my application for admission and to return abroad . . .

This statement was signed by the alien on June 5, 1979, and the alien's signature was witnessed by a Supervisory Immigration Inspector.

The record also contains Form I-94 (Arrival-Departure Record) relating to the alien. Form I-94 indicates that the alien was paroled on June 5, 1979, for the purpose of being removed to London, England, on June 5, 1979, via Trans World Airlines. The record further indicates that an officer of the Immigration Service served Trans World Airlines Form I-259 (Notice to Detain, Deport, Remove or Present Aliens) on June 5, 1979, at 5 p.m. Form I-259 was signed for by an agent of Trans World Airlines and reads in part as follows:

... to the owner, agent ... of the Trans World Airlines. Pursuant to the provisions of the Immigration and Nationality Act, and the Regulations issued by the Attorney General thereunder, you are directed to ... Remove to London on June 5, 1979, at 7:45 p.m. ... Tanahan, Megerdich ...

The applicant, however, did not depart the United States, but instead absconded from the port of entry. The next day, June 6, 1979, he appeared voluntarily with his attorney and was processed as an alien who had entered without inspection.[1] On June 7, 1979, the United States Attorney declined prosecution under 8 U.S.C. 1325 for entry without inspection in favor of administrative proceedings. The applicant was then granted voluntary departure pursuant to the policy then in effect concerning Iranians.

On August 16, 1979, the applicant commenced the initial processing of an application for labor certification and this eventually resulted in his being the beneficiary of a sixth-preference visa petition approved on January 16, 1980. An Application for Status as Permanent Resident was filed on April 4, 1980, and the question of the applicant's eligibility for adjustment of status is now at issue.

Counsel's argument is succinct and simply states "parole is parole, whether to the airline for five hours or sixty days." In conclusion counsel states that there is no question that the applicant was paroled and therefore he is statutorily eligible for adjustment under section 245 of the Act.

The evidence of record clearly establishes that the alien was paroled into the United States pursuant to Service Operations Instructions 235.1(o). Therefore, the sole issue for our consideration is whether the alien's application for adjustment to that of a permanent resident under section 245 of the Act merits favorable exercise of the Attorney General's discretion.

The Act empowers the Attorney General or his designee (normally an officer of the Immigration and Naturalization Service) to determine if an applicant is entitled to the favorable exercise of the Attorney General's discretion. Statutes cannot be so detailed as to contain every regulation and form of procedure by which legislative policies set forth therein are carried out. Consequently, the courts have recognized that administrative officers must be permitted some discretion in the enforcement of laws.

---

[1] As a parolee, applicant for admission should not have been deemed to have made an entry without inspection under section 275 of the Immigration and Nationality Act, 8 U.S.C. 1325. The Board of Immigration Appeals held in *Matter of Barragan-Garibay*, 15 I&N Dec. 77 (BIA 1974), that where a paroled alien is erroneously prosecuted and convicted under section 275, the government will be collaterally estopped from denying that the applicant made an entry in subsequent administrative proceedings such as exclusion. This matter is distinguished from *Barragan* because this applicant was never convicted under section 275 and therefore the doctrine of collateral estoppel is not applicable.

Adjustment of status under section 245 of the Act was not designed to supersede the regular consular visa-issuing processes or to be granted in nonmeritorious cases. *Chen* v. *Foley*, 385 F.2d 929 (6 Cir. 1967), *cert denied*, 393 U.S. 838 (1968). An applicant who meets the objective prerequisites for adjustment of status is in no way entitled to that relief. *Jarecha* v. *INS*, 417 F.2d 220 (5 Cir. 1969). In the instant case, the alien has no close family ties or dependents living in the United States (the alien's spouse and his two children are citizens of Iran and have resided in London, England since November 1978). We also find that the alien's actions on June 5, 1979, clearly indicated that he intended to remain in the United States by superseding the regular consular visa-issuing process and by asconding from Trans World Airlines he hindered the Service in its effort to enforce the legislative policies set forth by Congress.

After carefully considering the entire record, together with counsel's representations on appeal, it is our considered opinion that the alien is not entitled to adjustment of status. Accordingly, the application is denied as a matter of discretion and the following order will be entered.

**ORDER:** Application denied.