Sabah PUTRUS and Mahrus
Putrus, Plaintiffs,

v.

James MONTGOMERY, et al.,
Defendants.

No. 82–72770.

United States District Court,
E.D. Michigan, S.D.

Sept. 8, 1982.

Fakhri W. Yono, Detroit, Mich., for plaintiffs.

Karl R. Overman, Asst. U.S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary injunction under Fed.R.Civ.Pro. 65. The plaintiffs, Sabah and Mahrus Putrus, seek to enjoin the District Director of the Immigration and Naturalization Service (INS) from enforcing a final exclusion order against them.

Plaintiffs are natives and citizens of Iraq who attempted entry at New York, New York on March 24, 1980. They had not obtained visas for entry and attempted to enter as transits without visa (TRWOV).[1] Plaintiffs were part of a group of seven Iraqi Christians who boarded an airliner in Jordan that was bound for the Bahamas after a stop in New York. When the plane landed in New York, plaintiffs refused to reboard the plane and sought political asylum under 8 U.S.C. § 1253(h). The applications for political asylum were filed on March 28, 1980. The plaintiffs did not gain admission to the United States, but were

---

1. TRWOV is a nonimmigrant status which allows the nonimmigrant alien to enter the United States without a visa if he is in continuous and immediate transit through the United States. Section 1101(a)(15)(C) of Title 8, U.S.C., provides:

 (15) The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

 . . . . .

 (C) an alien in immediate and continuous transit through the United States.

 Section 1182(a)(26) of Title 8, U.S.C., provides:
 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 (26) Any nonimmigrant who is not in possession of (A) a passport valid for a minimum period of six months from the date of the expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period; and (B) at the time of application for admission a valid nonimmigrant visa or border crossing identification card;

 Section 1182(d)(4)(C) further provides:
 (4) Either or both of the requirements of paragraph (26) of subsection (a) of this section may be waived by the Attorney General and the Secretary of State acting jointly ...
 (C) in the case of aliens proceeding in immediate and continuous transit through the United States under contracts authorized in section 1228(d) of this title.

 An applicant for admission under the transit without visa privilege must comply with the conditions specified in 8 CFR § 214.2(c).

paroled under 8 U.S.C. § 1182(d)(5)(A) to await an exclusion hearing.[2]

An exclusion hearing was held before an immigration judge on January 15, 1981.[3] The immigration judge considered plaintiffs' applications for asylum under 8 U.S.C. § 1253(h) and the charges of the INS that plaintiffs should be excluded under 8 U.S.C. § 1182(a)(19) and (20).[4] On April 27, 1981, the immigration judge denied plaintiffs' applications for political asylum. The immigration judge also concluded that the charge that plaintiffs should be excluded under 8 U.S.C. § 1182(a)(19) had not been satisfactorily established. He further ruled, however, that plaintiffs were excluded under 8 U.S.C. § 1182(a)(20) and entered an exclusion order.

The mother of the plaintiffs, who are brothers, is a lawful permanent resident of the United States.[5] On March 23, 1981, the mother had filed a petition for visas for plaintiffs as unmarried sons of a permanent resident under 8 U.S.C. § 1153(a)(2), which were subsequently approved. On April 21, 1981, plaintiffs filed adjustment applications under 8 U.S.C. § 1255 for changes in status to permanent residents.[6] On May 12, 1981, the District Director for the INS denied each plaintiff's application in the exercise of his discretion. The District Director found that plaintiffs had a preconceived intent to remain in the United States permanently at the time they attempted entry and their actions were indicative of an overall scheme to circumvent the normal consular visa issuing process. He further found that there were no unusual or outstanding equities sufficient to overcome the adverse factors in each plaintiff's case. The cases were referred to the deportation section of the INS for execution of the exclusion or-

---

**2.** Section 1182(d)(5)(A) provides:

(5)(A) The Attorney General may, except as provided in subparagraph (B) in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served, the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

**3.** Since plaintiffs never gained admission to the United States, an exclusion hearing, rather than a deportation proceeding, was the appropriate mechanism for returning them to Iraq. *See Reid v. INS,* 420 U.S. 619, 621, 95 S.Ct. 1164, 1166, 43 L.Ed.2d 501 (1975).

**4.** Section 1182(a)(19) and (20) provide:

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

. . . . .

(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;

(20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title; ...

**5.** Plaintiffs' mother had come to the United States on July 30, 1980 as a nonimmigrant visitor. Their sister became a naturalized citizen on October 27, 1980. On November 28, 1980, the sister filed a petition for an immediate visa for her mother, who simultaneously filed for a change in status to permanent resident. On February 5, 1981, the mother's status was adjusted to that of a lawful permanent resident.

**6.** Section 1255 provides in pertinent part:

(a) The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. ...

der entered by the immigration judge on April 27, 1981.

Plaintiffs filed the complaint in this action on July 28, 1982, claiming that the defendant District Director wrongfully and prejudicially abused his discretion when he denied plaintiffs application for adjustment of status under 8 U.S.C. § 1255. On July 30, 1982, plaintiffs sought and received a temporary restraining order under Fed.R. Civ.Pro. 65(b). The matter is presently before the Court on plaintiffs' motion for a preliminary injunction. Plaintiffs seek to enjoin the District Director from enforcing the exclusion order.

In *Friendship Materials, Inc. v. Michigan Brick, Inc.* 679 F.2d 100 (6th Cir.1982), the Sixth Circuit discussed the four factors a district court must consider on a motion for a preliminary injunction. The court stated:

> In exercising its discretion to grant a preliminary injunction, however, the district court must consider four factors:
>
> 1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
>
> 2) Whether the plaintiff has shown irreparable injury;
>
> 3) Whether the issuance of a preliminary injunction would cause substantial harm to others;
>
> 4) Whether the public interest would be served by issuing a preliminary injunction.

*Id.* at 102. *See also Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977). In this case, the defendant argues that plaintiffs have not made the necessary showing of a strong or substantial likelihood of success on the merits.

Plaintiffs assert that the District Director wrongfully and prejudicially abused his discretion when he denied their applications for adjustment of status under 8 U.S.C. § 1255. They contend that the District Director incorrectly found that they had a preconceived intent to remain in the United States when they attempted entry. Plaintiffs argue that they did not have an opportunity to conceal their intent or make misrepresentations because they did not ac-

quire an entry visa abroad. They also assert that they disclosed to the U.S. officials their true intention of remaining in the United States indefinitely by requesting asylum at their first contact with the inspection officer in New York. Plaintiffs contend that they acted in good faith when dealing directly with the U.S. officials and did not misrepresent or conceal their true intent to remain in the United States.

To establish a substantial probability of success on the merits in this case, plaintiffs must show a substantial likelihood that the District Director abused his discretion in denying their adjustment applications under 8 U.S.C. § 1255. Section 1255(a) commits requests for change in status to the sound discretion of the INS. It provides that, "The status of an alien ... *may* be adjusted by the Attorney General *in his discretion* ..." (emphasis added). In *Von Pervieux v. INS,* 572 F.2d 114 (3d Cir.1978), the court discussed the standard for the exercise of discretion with respect to an application for adjustment of status. The court stated:

> Petitioners' second argument—that the Board abused its discretion in declining to grant the discretionary relief of adjustment of status—must be evaluated in terms of the precepts announced by this Court, sitting en banc, in *Ameeriar v. INS,* 438 F.2d 1028, 1029 ( [3rd Cir.] 1971). There the standard for the proper exercise of discretion with respect to a petition for adjustment of status was said to be the one expressed in *Santos v. INS,* 375 F.2d 262, 264 (9th Cir.1967):
>
> > An "evaluation of all the facts" requires due consideration to be given to the presence or absence of special equities ... Indeed, such a requirement is implicit in the high burden of proof placed on the applicant by the Board. "The extraordinary discretionary relief provided in Section 245 of the [Immigration and Nationality] Act can only be granted in meritorious cases; the burden is always upon the alien to establish that his application for such relief merits favorable consideration." (emphasis in original).

As the Court in *Ameeriar* stated, "Adjustment of status is therefore a matter of administrative grace, not merely statutory eligibility." 438 F.2d at 1030. *Id.* at 118 (footnote omitted). *See also Santos v. INS,* 375 F.2d 262 (9th Cir.1967). In *Sanghavi v. INS,* 614 F.2d 511 (5th Cir. 1980), the court held that it is within the discretion of the INS to deny an adjustment of status even when the objective requirements for a change in status have been satisfied. The courts have recognized that the INS may properly consider an applicant's preconceived intent to remain permanently as a critical factor in determining whether to grant adjustment of status. *See, e.g., Von Pervieux v. INS, supra; Santos v. INS, supra; Chen v. Foley,* 385 F.2d 929 (6th Cir.1967).

■ The scope of judicial review of discretionary acts of the INS is very limited. The Court is not permitted to make an independent inquiry into the facts and cannot substitute its judgment for that of the INS. *Siu Fung Luk v. Rosenberg,* 409 F.2d 555, 559 (6th Cir.1969). The Court may find an abuse of discretion "only if there is no evidence to support the decision or an improper understanding of the law." *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir.1971).

Defendant argues that the courts have generally sustained the refusal of the INS to grant an adjustment of status under 8 U.S.C. § 1255 when the District Director has found that the alien entered the United States with a preconceived intent to remain permanently. *See, e.g., Von Pervieux v. INS, supra; Faddah v. INS,* 553 F.2d 491 (5th Cir.1977); *Chen v. Foley,* 385 F.2d 929 (6th Cir.1967). Plaintiffs attempt to distinguish these cases, however, on the grounds that the aliens in those cases had misrepresented or concealed their intention to remain in the United States. Plaintiffs argue that the District Director's finding of a preconceived intent to remain permanently was an abuse of discretion because there is no evidence in the record that they misrepresented or concealed their intent to remain permanently. Plaintiffs assert that a finding of preconceived intent must be based on a formulation of intent to remain in the United States *and* concealment of that intent from U.S. officials. Plaintiffs, however, fail to refer to any authority that affirmatively supports this argument. Their argument is based solely on an attempt to distinguish the cases relied upon by the government.

■ After careful review of the cases relied upon by the government, the Court finds that plaintiffs' attempt to distinguish those cases is without merit. In determining whether the District Director abused his discretion in finding that an alien had a preconceived intent to remain permanently, the courts look to whether there was evidence in the record to show that the alien had the intention of remaining indefinitely at the time he came to the United States. *See Von Pervieux v. INS, supra* at 118; *Faddah v. INS, supra* at 495; *Chen v. Foley, supra* at 935–36.[7]

■ In this case, the Court concludes that plaintiffs have failed to show a substantial probability that the District Director's finding of plaintiffs' preconceived intent to remain permanently at the time of attempted entry is without substantial support or so clearly unreasonable as to constitute an abuse of discretion. A review of the District Director's decisions on the applications reveals that he considered the history and circumstances of each plaintiff's attempted entry. Most significantly, he considered each plaintiff's own sworn testimony that it was their true intention to seek political asylum in the United States at the time they boarded the airliner for the Bahamas. The Court finds that there is a

7. Plaintiffs appear to confuse 8 U.S.C. § 1255 with 8 U.S.C. § 1182(a)(19), which requires exclusion of "any alien who … seeks to enter the United States by fraud or misrepresentation of a material fact." Although a charge against plaintiffs under section 1182(a)(19) was considered by the immigration judge at the exclusion hearing, the District Director's denials of plaintiffs' applications for adjustment of status were based on an exercise of his discretion under section 1255.

sufficient basis for concluding, as the District Director did, that plaintiffs did have a preconceived intent to remain permanently in the United States.

■ As alternative grounds for denying plaintiffs' motion for a preliminary injunction, defendant asserts that plaintiffs are precluded from obtaining a change in status under section 1255(c)(3) because they attempted to enter the United States as TRWOVs.[8] Although the resolution of this issue is not dispositive of plaintiffs' motion in light of the Court's other findings, the Court will also address this issue.

Defendant argues that section 1255(c)(3) precludes plaintiffs from obtaining an adjustment of status because they attempted to enter the United States as TRWOVs. Although plaintiffs did not actually have TRWOV status because of an INS regulation denying this status to all Iraqis,[9] plaintiffs stated that they entered the United States as TRWOVs in their requests for asylum. Defendant asserts that plaintiffs' procedure for attempting entry and their prior statements establishes that they were de facto TRWOVs, and as such, are statutorily precluded from an adjustment of status under section 1255. Defendant further asserts that the mere fact that plaintiffs were paroled into the United States under 8 U.S.C. § 1182(d)(5)(A) does not change their status as de facto TRWOVs.

Plaintiffs rely on section 1255(a) which provides that the status of an alien who was paroled into the United States may be adjusted. They contend that after they were paroled in New York, they were entitled to an adjustment of status under section 1255.

The Court concludes that section 1255(c)(3) precludes plaintiffs from obtaining an adjustment of status. If plaintiffs had legally obtained TRWOV status, they would not be eligible for an adjustment of

status under section 1255(c)(3). Although an INS regulation denied TRWOV status to plaintiffs, they ignored the INS regulation and attempted to enter the United States by the procedure used to obtain TRWOV status. Since the INS regulation denied TRWOV status to plaintiffs, they could not be admitted as TRWOVs under 8 U.S.C. § 1101(a)(15)(C) and were paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). The Court, however, fails to comprehend how plaintiffs could have obtained the right to seek an adjustment of status by illegally attempting to enter as TRWOVs in contravention of the INS regulation when section 1255(c)(3) precludes aliens who legally enter as TRWOVs from obtaining an adjustment of status.

The Court finds that plaintiffs were admitted as de facto TRWOVs when they attempted to enter as TRWOVs in New York. The Court also finds that the subsequent parole of the plaintiffs into the United States did not affect their status as de facto TRWOVs. In *Leng May Ma v. Barber,* 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958), the Supreme Court stated:

> The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status . . . .

*Id.* at 190, 78 S.Ct. at 1075 (construing 8 U.S.C. § 1253(h) which pertains to aliens "within the United States.") *See also United States v. Hanna,* 639 F.2d 194 (5th Cir. 1980); *United States v. Kavazanjian,* 623 F.2d 730 (1st Cir.1980). Since plaintiffs were de facto TRWOVs, section 1255(c)(3) precludes them from obtaining an adjustment of status.

Plaintiffs have failed to show a substantial probability of success on their claim

**8.** Section 1255(c)(3) provides in pertinent part: The provisions of this section shall not be applicable to ... (3) any alien admitted in transit without visa under section 1182(d)(4)(C) of this title.
For a discussion of the TRWOV status, *see* footnote 1.

**9.** Because of a perceived abuse of the TRWOV status by Iraqi Christians seeking to leave Iraq, the INS issued a regulation denying TRWOV status to all Iraqis, effective December 5, 1977. *See* 8 CFR § 212.1(e); 42 Fed.Reg. 61449, 61450 (1977). *See also United States v. Kavazanjian,* 623 F.2d 730 (1st Cir.1980).

that they were eligible to obtain an adjustment of status under 8 U.S.C. § 1255. Even if plaintiffs were eligible to obtain an adjustment of status, however, their applications for adjustment of status have been denied by the District Director in the exercise of his discretion. Since plaintiffs have failed to show a substantial probability that the District Director abused his discretion, they have failed to show a substantial probability of success on the merits as required in order to obtain a preliminary injunction. *See Friendship Materials, Inc. v. Michigan Brick, Inc., supra.* For this reason, and the other reasons stated herein, plaintiffs' motion for a preliminary injunction will be denied. An appropriate order shall be submitted.