**NOT RECOMMENDED FOR PUBLICATION**
File Name: 04a0075n.06
Filed: November 9, 2004

**No. 02-3763**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**CRUZ HERNANDEZ,**

     **Petitioner,**

**v.**                                                   **ON APPEAL FROM THE BOARD OF
                                                        IMMIGRATION APPEALS**

**JOHN ASHCROFT, Attorney General,**

     **Respondent.**

                                        /

**BEFORE:**    **CLAY and GILMAN, Circuit Judges; O'Malley, District Judge.**[*]

    **CLAY, Circuit Judge.**  Petitioner, Cruz Hernandez, appeals from the order issued by the Board of Immigration Appeals, entered on June 6, 2002, affirming, with an opinion, the immigration judge's July 7, 1997 decision, ordering Petitioner's deportation, pursuant to 8 U.S.C. § 1227 (formerly 8 U.S.C. § 1251). For the reasons set forth below, we **DISMISS** the appeal for lack of jurisdiction.

**BACKGROUND**

*Procedural History*

    In the summer of 1992, the Department of Justice's Immigration & Naturalization Service ("INS") issued an Order to Show Cause, alleging that Petitioner, Cruz Hernandez, was a citizen and

---

[*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

native of Mexico, who had entered the United States without inspection. This commenced deportation proceedings. A hearing before the Immigration Court of the Department of Justice's Executive Office for Immigration Review commenced on March 19, 1993, in Cleveland, Ohio, and proceeded, through numerous continuations, on April 2, 1993, March 18, 1994, October 28, 1994, August 30, 1995, February 16, 1996, and January 3, 1997.

On October 28, 1994, Petitioner filed a Motion for New Hearing Date, basing the request on Petitioner's July 9, 1994 marriage to United States citizen Julie Hernandez and the filing of an I-130 application to establish Petitioner's relation to Julie Hernandez.[1] Under what (prior to subsequent amendment) was § 212(h) of the Immigration and Nationality Act, if an I-130 petition is granted, then a petitioner becomes eligible for permanent resident status and the Attorney General had the discretionary authority to waive the petitioner's deportability. *Matter of Sanchez*, 17 I. & N. Dec. 218, 1980 BIA LEXIS 3 (1980).

At the February 16, 1996 portion of the hearing, the immigration judge postponed a final deportation ruling to allow for an INS ruling (by agency personnel separate from the immigration judge) on the I-130 petition. In an October 22, 1996 letter, the INS denied the I-130 petition, on grounds that Petitioner may have been born in the United States; citizens are ineligible to submit I-130 petitions. The letter stated that the decision was unappealable but that a motion to reopen could

---

[1]U.S. Citizenship and Immigration Services, Form I-130, Petition for Alien Relative, *at* http://uscis.gov/graphics/formsfee/forms/i-130.htm ("A citizen or lawful permanent resident of the United States may file this form to establish the relationship to certain alien relatives who wish to immigrate to the United States. A separate form must be filed for each eligible relative.").

be filed, pursuant to 8 C.F.R. § 103.5. On the basis of this denial, the immigration judge continued the hearing, on January 3, 1997.

On July 7, 1997, the immigration judge issued a written decision, ordering Petitioner's deportation, after finding that Petitioner was deportable because he was born in Mexico and had entered the United States without inspection; the immigration judge also found that undisputedly Petitioner had been convicted of criminal offenses, which provided additional grounds for deportation, once it had been established that Petitioner was not a citizen. On June 6, 2002, the Board of Immigration Appeals ("BIA") issued a written order, affirming (per curiam, with an opinion) the immigration judge's decision. Before the BIA's order was issued, Petitioner had filed a new I-130 petition, on August 17, 1998; the INS granted this petition, on February 12, 2001. The BIA's order did not mention the grant of the I-130 petition.

On July 8, 2002, Petitioner filed a timely notice of appeal of the BIA's order. On March 12, 2003, Respondent filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Request to Stay Briefing Schedule Pending Disposition of Motion to Dismiss. On April 11, 2003, Petitioner filed a Reply Brief to the motion. On June 17, 2003, in an unexplained order, this Court referred the motion to the merits panel. Various attorneys have represented Petitioner throughout the deportation proceedings.

### *Substantive Facts*

The Order to Show Cause listed seven allegations, of which Petitioner contests only the first two. The two disputed allegations were that Petitioner: (1) was not a citizen or national of the United States and (2) was a native and citizen of Mexico. The undisputed allegations were that

Petitioner: (3) entered the United States at an unknown place on an unknown date; (4) was not inspected by an immigration officer upon entry; (5) was convicted in Lucas County Court of Common Pleas, Toledo, Ohio, on June 28, 1989, "for the offense of Attempted Robbery committed on or about April 28, 1989, in violation of Ohio Revised Code 2923.02/2911.02"; (6) was "sentenced to confinement for a period of three to ten years" for the offense of Attempted Robbery; and (7) was convicted in Lucas County Court of Common Pleas, on June 28, 1989, "for the offense of Carrying a Concealed Weapon, in violation of Ohio Revised Code 2923.12." (J.A. at 1.)

Regarding the contested issues of Petitioner's citizenship and nationality, various pieces of evidence were presented. At the March 18, 1994 portion of the deportation hearing, Petitioner claimed to have been born in Port Isabel, Texas, on May 3, 1951. According to this account, Petitioner's "first memory was when [he] used to live in San Benito, Texas," at an early age, when Petitioner began his schooling, while living with his parents. (J.A. at 34-35.) Again, according to this account, Petitioner was later separated from his parents; Petitioner hitchhiked from the United States to Mexico at age seven or eight to look for his parents. Upon finding out that his parents were dead, Petitioner became alienated from other family members and began using various names. Petitioner stayed with a family in Mexico until reaching age twelve. According to Petitioner's account at the hearing, from 1963 to 1974, Petitioner lived in various locations in the United States, until an accident caused Petitioner to be hospitalized for a few months, at which time a lawyer uncovered Petitioner's birth certificate and discovered that Petitioner had been using false names.

At the March 18, 1994 hearing, an issue regarding a birth certificate arose, leading the immigration judge to suspend the hearing and to request that Petitioner's attorney provide original

4

documents to the INS for a forensic document examination. The hearing continued on October 28, 1994. Later in the case, Petitioner's attorney admitted to confusion over Petitioner's identity, stating: "I don't know who Mr. Hernandez is for sure. He lived in Texas for quite some time, he's lived in the United States almost all of his life, but as to where he was actually born, and whether his mother was a lawful permanent resident, I'm not sure." (J.A. at 62.) Subsequently, Petitioner's attorney conceded that the birth certificate that had been previously presented to establish Petitioner's United States citizenship did not belong to Petitioner.

## DISCUSSION

On appeal, Petitioner raises three issues, and Respondent raises one issue. First, Petitioner argues that the BIA erred by allowing the immigration judge to remove Petitioner, without allowing a proper adjudication of the I-130 petition, even though it was allegedly apparent to the judge that the INS's denial of the petition was incorrect. Secondly, Petitioner contends that the BIA erred by allowing the immigration judge to remove Petitioner, without allowing Petitioner to pursue his application for adjustment and § 212(h) relief, or to have a hearing on those applications, in the face of overwhelming evidence of the ineffective assistance of petitioner's counsel, including counsel's failure to appeal the service's wrongful denial of the I-130 petition. Petitioner's third argument is that the BIA erred by failing to require production of the old administrative files of his mother, which were mentioned but never produced at the hearing. Respondent's sole argument is that this Court lacks jurisdiction to review the BIA's order, because it is a final deportation order ruling that an alien is deportable by reason of having been convicted of a firearm offense.

Because we find Respondent's contention that this Court lacks jurisdiction to review the deportation order meritorious, we consider Petitioner's arguments only insofar as they would prove relevant to the issue of jurisdiction.

Whenever a federal court discovers that it lacks jurisdiction, the case must be dismissed. FED. R. CIV. P. 12(h)(3). Under § 242(a)(2)(C) of the Immigration and Nationality Act ("INA"): "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2) or 237(a)(2)(A)(iii), (B), (C), or (D) . . . ." 8 U.S.C. § 1252(a)(2)(C). One of the referenced provisions, § 237(a)(2)(C) of the INA, states: "Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18, United States Code) in violation of any law is deportable." 8 U.S.C. § 1227(a)(2)(C). Read together, these provisions dictate that this Court lacks jurisdiction to review a final order of deportation of an alien who is removable by virtue of having committed any firearm offense that is described in § 1227(a)(2)(C). *See, e.g.*, *Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004). "The term 'alien' means any person not a citizen or national[2] of the United States." 8 U.S.C. § 1101(a)(3).

---

[2]The terms national and citizen are defined jointly. 8 U.S.C. § 1401 ("The following shall be nationals and citizens of the United States at birth . . . .").

Where, as here, a petitioner's citizenship is controverted, this Court retains jurisdiction over the claim of citizenship. "[W]hen a citizenship claim has been made, we have jurisdiction, pursuant to 8 U.S.C. § 1252(b)(5)(A) and (B) (Supp. II 1996), to determine whether there is a 'genuine issue of material fact' as to the citizenship claim requiring transfer to the district court for necessary fact finding." *Batista v. Ashcroft*, 270 F.3d 8, 12 (1st Cir. 2001).

The seventh allegation in the Order to Show Cause stated that Petitioner was convicted in state court in "Toledo, Ohio for the offense of Carrying a Concealed Weapon, in violation of Ohio Revised Code 2923.12." (J.A. at 1.) Based on this charge, the Order to Show Cause found a violation of what was then INA § 241(a)(2)(C),[3] which provides that an alien is deportable if convicted of certain firearm offenses. Petitioner admitted to this allegation. The immigration judge found three independent reasons for ordering deportation: violation of what was then INA § 241(a)(2)(C); entry without inspection, in violation of what was then INA § 241(a)(1)(B); and conviction for a crime involving moral turpitude, in violation of what was then INA § 241(a)(2)(A)(i).

The BIA's explained order affirmed the immigration judge's written decision. The heading of the BIA order did not cite violation of the firearm provision as a third independent basis for deportation, instead citing only the other two bases. However, it is clear that this omission in the heading was merely a clerical oversight. The substance of the BIA order's expressly acknowledges the firearm offense as a basis for deportation, stating, "we find no reason to disturb the immigration

---

[3]The Order to Show Cause was issued in 1992. In 1996, § 241 of the INA, 8 U.S.C. § 1251, was redesignated (by amendment) as INA § 237, 8 U.S.C. § 1227.

judge's decision to deny the respondent voluntary departure due to his 1989 convictions for attempted robbery and carrying a concealed weapon." (J.A. at 15) (citations omitted). Petitioner does not contest that he was found deportable by reason of the firearm offense.

Thus, the only remaining relevant issue regarding our jurisdiction is Petitioner's citizenship. If there is a genuine issue of material fact which could allow Petitioner to demonstrate citizenship, then the factual issue will be resolved by the district court; in the absence of a genuine issue of material fact, we lack jurisdiction to review the deportation order.

Respondent bears the burden of showing that Petitioner is an alien. *Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 277 (1966) ("it is incumbent upon the Government in such proceedings to establish the facts supporting deportability by clear, unequivocal, and convincing evidence."). Respondent avers, "He [Petitioner] no longer claims to be a United States citizen." (Respondent's Brief at 19.) However, as this Court observed in its June 17, 2003 order, "in his proof brief, the petitioner claims that 'he should now be found to be a U.S. Citizen, in accordance with Section 301(f) [of the INA].'" Section 301(f) of the INA defines as a citizen at birth "a person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States." 8 U.S.C. § 1401(f). Respondent is incorrect in averring that Petitioner no longer claims to be a citizen.

Still, there is not a genuine issue of material fact here. Petitioner does not qualify under § 301(f) as "a person of unknown parentage found in the United States while under the age of five years." Petitioner does not claim to have been "found in the United States while under the age of five." To the contrary, at the deportation hearing, Petitioner stated that he lived in the United States

8

until reaching age seven or eight, at which time he returned to Mexico to search for his parents; at approximately age twelve, Petitioner returned to the United States and later was found by INS authorities.

Nor has Petitioner presented any other means of showing citizenship. Petitioner's attorney conceded that a birth certificate that had been presented to establish Petitioner's United States citizenship did not belong to Petitioner. Petitioner raises the theoretical possibility that the administrative file of his mother–which was never produced at the hearing–contained information that might have shown that Petitioner "had previously been made a lawful permanent resident, or even a U.S. Citizen, through his mother, or through both parents." (Petitioner's Brief at 20.) However, this argument is too speculative to raise a genuine issue of fact. Although Petitioner's mother's social security card was presented at the hearing, this does not establish her citizenship.[4] Moreover, the citizenship of Petitioner's mother would not be sufficient in itself to establish Petitioner's citizenship, because a claim of citizenship based upon parentage depends on characteristics relating to both parents. Petitioner does not allege that his father was a citizen or a national of the United States, as would be needed for Petitioner to make a claim of citizenship based upon parentage.[5] Petitioner's allegation that his sister was a United States citizen by birth is not

---

[4]A lawful permanent resident (who is not a citizen or national) can have a social security card. *E.g.*, *United States v. Bancalari*, 110 F.3d 1425, 1427 (9th Cir. 1997) ("Once in the truck, Bancalari took Muniz's permanent resident card and social security card away from her").

[5]Citizenship by parentage is conferred upon:

(c) a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person;

supported by the portion of the record that is cited. There simply is no genuine issue of material fact regarding Petitioner's citizenship.

Alternatively, Petitioner's reply to the motion to dismiss stated that Petitioner "has throughout these proceedings been eligible to adjust his status to that of a lawful permanent resident of the United States. This is for the reason that he was, and remains, legitimately married to a United States Citizen." (Petitioner's Reply Brief to Motion to Dismiss at 2.) Yet Petitioner's claim that he

is a lawful permanent resident of the United States, through marriage, could not establish citizenship. To be a lawful permanent resident–i.e., to have a green card[6]–does not establish citizenship or nationality. By marrying a United States citizen or lawful permanent resident, a person can become a lawful permanent resident, i.e., a "permanent resident alien." But permanent resident alien status (through marriage or otherwise) does not establish United States citizenship or nationality.[7]

---

(d) a person born outside of the United States and its outlying possessions of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year prior to the birth of such person, and the other of whom is a national, but not a citizen of the United States.

8 U.S.C. § 1401(c),(d).

[6]*E.g.*, U.S. Citizenship and Immigration Services: How Do I Renew My Permanent Resident Card (Green Card)?, *at* http://uscis.gov/graphics/howdoi/renew.htm.

[7]*United States v. Zalman*, 870 F.2d 1047, 1049 (6th Cir. 1989) ("three counts of conspiring to defraud the INS by arranging fraudulent marriages for various Iranians to permit them to remain in the United States as **permanent resident aliens**") (emphasis added); *Yaldo v. Immigration & Naturalization Serv.*, 424 F.2d 501, 502 (6th Cir. 1970) ("Petitioner seeks review of decisions of the Board of Immigration Appeals affirming the findings of a Special Inquiry Officer pursuant to 8 U.S.C. § 1256 (1964) rescinding petitioner's **permanent resident alien status** and ordering him

There is no genuine issue of material fact regarding Petitioner's citizenship; as a result, this Court lacks jurisdiction to review deportation on the basis of a firearm conviction.

It is noted that Petitioner's claims include allegations of ineffective assistance of counsel. Petitioners before the INS have a due process right to counsel. This right is violated if (1) counsel was so deficient as to render the proceedings fundamentally unfair, preventing the petitioner from reasonably presenting his case, and (2) the petitioner was prejudiced by counsel's performance. *Matter of Lozada*, 19 I. & N. Dec. 637, 1988 BIA LEXIS 19 (1988). Under INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to consider a claim of ineffective assistance of counsel unless Petitioner can demonstrate that deficient counsel prejudiced him in such a manner as to prevent him from raising a genuine issue of material fact as to citizenship, or in such a manner as to prevent him from contesting his firearm conviction. The substance of Petitioner's ineffective assistance of counsel claim relates to the I-130 petition. The grant of the I-130 petition could not have established citizenship; thus, in light of Petitioner's admission as to the firearm conviction, ineffective assistance of counsel relating to the I-130 petition could not possibly overcome the jurisdictional bar to our reviewing the deportation order.

---

deported. The underlying substantive issue in both the recission and deportation proceedings was whether petitioner entered into a fraudulent marriage with an American citizen solely for the purpose of gaining permanent resident alien status.") (emphasis added); *Chen v. Foley*, 385 F.2d 929, 932 (6th Cir. 1967) ("On January 1, 1962, petitioner married Ella Lucille Self, a thirty-year old native born United States citizen, who had been previously married and divorced. He immediately filed a petition for adjustment of status to **permanent resident alien**, using as grounds therefor his marriage and the subsequent visa petition filed on his behalf by Ella Lucille Self Chen.") (emphasis added).; *Caddali v. Immigration & Naturalization Serv.*, 975 F.2d 1428, 1429 (9th Cir. 1992) ("On the basis of this marriage she adjusted her status to that of a **permanent resident alien**.") (emphasis added).

**CONCLUSION**

For the aforementioned reasons, this Court lacks jurisdiction to consider Hernandez's appeal of the final deportation order.  Accordingly, the appeal is **DISMISSED**.